## Giunta et al. v. McLaughlin et al.

*E. W. Furia*, for appellants.

PARRY, J., October 18, 1937.—Appellants, who desired to operate a slaughter house in a district classified as "industrial", wherein the establishment of such business is prohibited, obtained a use registration permit from the engineer of the Bureau of Engineering, Surveys and Zoning upon a statement in the application that the premises were vacant and their "last previous use" was that of a "smoke and animal slaughter house". There are a number of slaughter houses in the immediate vicinity, permitted to operate because they were in existence at the time of the passage of the Philadelphia Zoning Ordinance of August 10, 1933 (Ordinances and City Solicitor's Opinions, 1933, pp. 268, 274), and so within its saving clause. Certain property owners and residents who objected to the establishment of an additional slaughter house thereupon filed protests with the zoning board of adjustment, which after several hearings revoked the permit, from which action we have this appeal.

The applicants called a number of witnesses at the hearings before the board to prove a prior use of the premises as a slaughter house, and contended that this being shown entitled them to a permit under section 4 of the ordinance, which reads as follows:

"Non-Conforming Use.

"(1) Any land, the existing use of which at the time of the passage of this ordinance, does not conform with the regulations of the district in which it is located, shall have such use considered a non-conforming use, which may continue on such land but shall be subject to the regulations covering non-conforming uses."

The pertinent regulation reads:

"(4) Discontinued Use. A non-conforming use when discontinued may be resumed as the same class of use but cannot be resumed as a non-conforming use of a lower class."

An examination of the testimony shows that the premises in question had not been used as a slaughter house for many years. There was proof that in 1877 animals were killed there and that this continued until about 1892, with perhaps some slaughtering done as late as 1899. It is clear, however, that in 1900 the premises were rented by one Lutz who smoked hams and made sauerkraut there. He continued there in this business until 1922. The testimony is positive that no slaughtering was done during the 22 years that Lutz was in business, and there is no evidence at all that there has been any slaughtering done on the property since that time.

The nonconforming use contemplated by the ordinance must be existing at the time of its passage, or, if then discontinued, the circumstances must permit the inference that there was an intention to resume such use at a later date. It is clear that the case cannot be brought within the language of the ordinance, for the obvious reason that the premises some 37 years ago were devoted to an entirely different use, which subsisted for 22 years and which is the last use of which there is any evidence. It follows that what must be considered as the existing use of this property at the time the ordinance was passed was either a conforming use or a nonconforming use of an entirely different character, depending upon whether smoking hams and making sauerkraut is permitted or

forbidden in an "industrial" district. If the latter, the evidence may support an application for a permit to establish a business of smoking hams and making sauerkraut, but it affords no basis for granting a permit to establish a slaughter house.

The Act of May 6, 1929, P. L. 1551, under which the Ordinance of 1933 was passed, confers the power upon the zoning board of adjustment:

"To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Appellants contend that the board of adjustment has abused its discretion, in that it has not made avail of this provision of the act of assembly to grant the permit. The special circumstances are said to be that the applicants, as soon as they had obtained a permit from the engineer of the bureau, purchased the property in question and proceeded to make engagements for the purchase of certain slaughter house equipment; that a hardship, in the form of a monetary loss, will result if they are not permitted to carry out their plans, which are not contrary to the public interest as there are a number of slaughter houses in the immediate vicinity already.

It seems open to doubt whether this situation presents the kind of specific case or unnecessary hardship which the legislature had in mind, but, should this be so, appellants do not appear to be entitled to any relief. In the first place, they obtained the permit from the engineer of the bureau upon a misrepresentation, to wit, that the existing use of the premises was that of a slaughter house; second, they were charged with notice that the granting of the permit only gave them a qualified right, as it was issued subject to an appeal to the zoning board of adjustment within a certain time; third, it by no

means follows that the establishment of another business of this character is not obnoxious to the public interest because there are already a number of slaughter houses in the neighborhood.

While the board of adjustment may authorize such variance from the terms of the ordinance as will not be contrary to the public interest, it may well be doubted whether this power extends to changing the classification of a district, but, be this as it may, we think the board correctly decided that applicants were not entitled to a permit under the terms of the .ordinance and that no abuse of discretion is shown in its refusal to vary those terms. The appeal is therefore dismissed.